Mr. Justice Walker delivered the opinion of the Court. From the facts, as disclosed by the record, it appears that Hopkins and McMechin instituted suit, in the State of Louisiana, against John G. Pratt & Co., that firm being composed of Pratt, Belknap and defendant, Barkman: that personal service of process was had on Pratt alone, but which purported to be a service on the firm by service on Pratt alone; upon which, without the appearance of any of the parties defendant, judgment was rendered against them by default. A regularly certified transcript of this judgment is made the foundation of the present suit against Barkman, one of the members of that firm, who interposed two pleas in bar : 1. Nul liel record : 2. In legal effect, that the court of Louisiana, where the judgment was rendered, had never acquired jurisdiction of his person by notice actual or constructive, and therefore the judgment was, in no respect, obligatory upon him. To the first of these pleas issue was taken; to the second, a demurrer was sustained. There was a trial on the plea of nul tiel record, and judgment for the plaintiffs, (a) Note(a). — Barkman’s Plea. — “And the said defendant, for a further plea, &c., says actio •non, because lie says that, at the time when the said proceedings were commenced, as set forth in said declaration, and from that time up to and at the time when said supposed judgments were rendered as aforesaid, he the said defendant was a citizen of the State of Arkansas, and resided therein, and was not served with process, and had no notice whatever of the pendency of said action, and that he never appeared thereto in person or by attorney; and this he is ready to verify &c..” — Hardy §■ Trap-nail. Reporter. The only point relied upon in defence is, that defendant Bark-man was, at the time of the institution of the suit and the rendition of the judgment in Louisiana, a non-resident of that State, and that said court never did acquire jurisdiction of his person by notice actual or constructive, nor had he by voluntary appearance subjected himself to such jurisdiction. The constitutional provision and the acts of Congress under it, in regard to the faith and credit to be given to judgments rendered in the several States, when sued upon, or their legal effect questioned in other States, are evidently based upon the principle that the merits of a case, when once fully and fairly tried and determined in one State, should not be subject to the subsequent investigation of the courts of other States, but that, when such judgment is sued upon in another State, it should in all respects be as conclusive upon the rights of the parties as it would be in the State in which it was rendered. That such was the intention of the framers of the constitution, and of Congress in its enactments under it, is too manifestly clear to admit of doubt. Nor is the correctness of this position questioned by the parties at issue in this case, if it be conceded that the court of Louisiana had, when the judgment was rendered, jurisdiction of the subject matter and of the person of the defendant. It is contended, however, that where actual notice has not been given, and the defendant has not subjected himself to the jurisdiction of the court by voluntary appearance, and is a nonresident of the State at the time the suit is brought and judgment rendered, that he cannot be reached or affected with constructive notice, whatever may be its effect upon resident citizens of the State: and that, should an attempt be made to render him liable on a judgment thus rendered, he may plead these facts in bar of a recovery upon such judgment. If it is true, as contended, that, in cases where judgment is rendered against a defendant upon constructive notice, the judgment shall not be absolutely binding upon him, and may be opened for the purpose of contesting the merits of the original cause of action, even where it is by the laws of the State where rendered, made conclusive upon him, it must be upon grounds which may apply as well in the State where the judgment is rendered as that to which it is transmitted. Otherwise, it is difficult to conceive how effect is to be given to the act of Congress, which provides “ That the records and judicial proceedings so authenticated shall have such faith and credit given to them in every court in the United States, as they have by the .laws or usages in the courts of the State from whence they shall be taken.” If the judgment, according to the laws of the State in which it is rendered, is conclusive as between the parties, it must necessarily be so in the State to which the record is transmitted; or the spirit and intention of the act is defeated. ' In pressing the distinction between actual and constructive notice, counsel seem to have lost sight of the provisions of the law. The question is not so much as to what kind of notice has been given to the defendant, as what the legal effect of the judgment is in the State where it was rendered. The same faith and credit, the same conclusiveness given to it there, must be given to it in every other State. Therefore the question of notice or no notice must be such as affects the validity of the judgment in the State in which it was rendered. It is contended that there was no personal notice to the defendant, and that he did not submit himself voluntarily to the jurisdiction of the court, and therefore he is not bound by the judgment and decision of the court. If this objection is worth anything, it must apply as well in as out of the State where the judgment was rendered. Thus considered, it conflicts in no respect with the provisions of the act of Congress; because a judgment rendered without having acquired jurisdiction of the person of the defendant by notice or otherwise, would not bind the defendant in the State where it was rendered, and of course not in any other State to which it might be transmitted. No valid judgment can be rendered whereby to affect the rights or liberty of the citizen, unless the court has first acquired jurisdiction of his person as well as of the subject matter in controversy. If the counsel be understood as assuming the unqualified ground that no conclusive valid judgment can be rendered by the court of one State upon constructive notice which may not be open to re-investigation in the State to which it is transmitted, then we think the ground too broad. We are not prepared to say that, as between the citizens of a State, the Legislature may not provide for constructive notice upon which a valid judgment, conclusive upon the parties as to the subject litigated in that State and equally so in every other State, may be rendered. But if it is intended to apply to constructive notice in cases where the party defendant is a non-resident of the State, where such proceeding is had, then a question arises of much- interest, not heretofore decided in this court; and as it comes directly up to the ground upon which we presume the defence in this case is designed to be rested, we will proceed to examine it. This distinction between the effect of constructive notice upon the rights of the citizens of the State or territory in which the judgment is rendered and the citizens of another State, has its foundation in the effect and extent of the legislative power of a State by law over the person or rights of a citizen beyond its jurisdiction. Jurisdiction, to be rightfully exercised, must be founded either upon the person’s being within the territory, or upon the thing’s being within the territory; for, otherwise, there can be no sovereignty exerted upon the known maxim, extra ter-ritorium jus dicenti non parcten impune. Boullenois puts this rule amongst his general principles, “ The law of sovereignty rightfully extends over persons who are domiciled within his territory and over property which is there situate.” Yattelllays down the doctrine in clear terms, “ The sovereignty, (he says,) united to dominion, establishes the jurisdiction of the nation in its territories or the country which belongs to it. It is its province or that of its sovereign to exercise justice in all places under its jurisdiction, and take cognizance of the crimes committed and the differences which arise in the country. On the other hand, no sovereignty can extend its process beyond its own territorial limits to subject either person or property to its decisions. Every exertion of authority of this sort beyond its limits, is a mere nullity, and incapable of binding such persons or property in any other tribunals. (3 Vatt. R. 2, chap. 8. Story’s Conf. Laws 450.) And the last mentioned writer, when treating in direct reference to constructive notice, whether by attachment or otherwise, as practiced within the several States, (p. 547,) says : “ In respect to such suits in personam, by a mere personal citation viis ct mo-dis, such as by posting up a citation, or by edictal citation, there is no pretence to say that such modes of proceeding can confer any legitimate jurisdiction over foreigners, who are non-residents, and do not appear to answer the suit. Whether they have notice of the suit or not, the effects of all such proceedings are purely local, and elsewhere they will be held to be mere nullities.” In his Commentaries on the Constitution, page 183, Stoey says : “ If a judgment is conclusive in the State where it is rendered, it is equally conclusive everywhere. If re-examinable there, it is equally open to the same inquiries in every other State. It is, therefore, upon the same footing as a domestic judgment. But this does not prevent an inquiry into the jurisdiction of the court, in which the original judgment was given, ,to pronounce it, or the right of the State itself to exercise authority over the person or the subject matter. The constitution did not mean to confer a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the territory.” In the case of Fowler vs. Parks et al., (3 Mason 280,) the same distinguished jurist, eminently distinguished for his deep research and thorough knowledge of constitutional law, then presiding as judge, said: “ No legislature can compel any person beyond his own territory to become a party t.o any suit instituted within its domestic tribunals. If they voluntarily appear, that is another matter. But the principle seems universal, and is consistent with the general principles of justice, that the legislature of a State can bind no more than the person and property within its territorial jurisdiction.” And in the case of Pickett vs. Swan, (5 Mason R. 42,) the same judge said : “ I have already intimated that no sovereignty can extend its process beyond its territorial limits to subject either person or property to its judicial decisions. Every exertion of power beyond its limits is a mere nullity, and incapable of binding such person or property in any other tribunal. If a State were to pass an act declaring that, upon personal notice of a suit brought against a foreigner, resident in a foreign country, proceedings might be had against him and a judgment obtained inviium, for aught I know, the local authorities might give binding efficacy to such judgment. But, elsewhere, they would be utterly void.” McRea vs. Mallon, (13 Pick. 53.) Phillips Ev., 3 vol. Hill & Cowen’s notes, 911. Borden vs. Felch, (13 J. R. 141.) Anderson vs. Montgomery, (19 J. R. 162.) Russell vs. Brigg, (9 Mass. 462.) Davis vs. Connelly’s ex., (4 B. Mon. 137,) and Shumway vs. Stillman, (4 Cow. 294,) are all cases which bear upon the point and sustain the authorities above quoted. And we think that they do conclusively show that the jurisdiction of the court which rendered the judgment may be inquired into, and, if it be found to be true that jurisdiction was not obtained over the person and the subject matter, that the action of the court therein is not binding on the defen» dant. These authorities do not, in the slightest degree, impair the force and effect of the act of Congress, but recognize the action of the court where it has once acquired jurisdiction of the person and the subject matter as being conclusive upon the rights of the parties, settling and closing up litigation touching the matter in dispute, and gives to the record of such judgment, when certified, and the subject of judicial consideration in any other State, the same force, credit and effect that it had in the courts of the State in which it was rendered. The act of Congress, in regard to the effect of judgments, contemplated legal judgments. It was intended to put a stop to investigation and re-investigation, by denying to the parties who had once litigated their claims, the privilege of opening the issues thus made and closed by solemn adjudication. Should they seek to do so when the records of such proceedings should be sent to another State to evidence the result of such adjudication ; but never to have that effect, where (for instance) the party defendant had never been called to contest the rights thus passed upon. The investigation, which is permitted, is not then as to the subject matter, nor the effect ofthe judgment properly speaking, in view of such judgment as was contemplated by the act of Congress, but it is an inquiry into the rightful exercise of the jurisdiction of the court over the person of the defendant, its right to make the judgment, which if rightfully made, we admit is to conclude them from re-investigation in that and every other State, The object of the act of Congress was to conclude the parties everywhere from re-investigating facts which had been submitted by them to a competent tribunal to decide, when once decided, not to bind them to abide a decision and adjudication, to which one of the parties had never submitted. Without attempting to enumerate the hardships and injustice which would result from rules so much at variance with our convictions of justice and right should the party be thus concluded, we do not hesitate to decide that such defence may be interposed as will question the jurisdiction of the court that rendered such judgment. Nor are the authorities less clear on the other point, that the legislative authoritiy of a State cannot by its enactments extend its authority beyond its own territorial limits. The power of a State is limited to person and property within its territorial limits, possessing no sovereign power beyond such limits, its legislative acts have no validity or effect upon person or property beyond such limits. To deny this would be, in effect, affirming that the sovereign could confer a power which it did not possess. The practice of proceeding against a defendant upon constructive notice, to say the least'of it, is only allowable upon the grounds of convenience or necesity, and is frequently attended with consequences the most serious to suitors. The force and effect of such proceedings, as between citizens of the same State where the act is passed, we are not now called upon to decide ; nor do we wish to be understood as expressing any opinion on that subject. But citizens of another State and who are not subject to the sovereign power of the State in which the act passed, cannot be affected by it without conceding unlimited power; for if power exists for one purpose beyond the territorial limits of the State, it may for any and every other purpose. If one citizen beyond its limits is subject to its power, any other citizen, indeed every other citizen might be. It cannot require argument or illustration to show the confusion and wrong which would follow, consequent upon a violation of the most firmly established principles. This defence (where the record shows a prima facia jurisdiction, or such a state of facts, as from which, with the aid of legislative enactments, jurisdiction might be acquired of the person of the defendant) is properly interposed by plea. It is not however necessary for us to decide, nor do we intend being understood as distinguishing between cases where picas may or may not be interposed, or where the defects are so grossly apparent and palpable as to supersede the necesity of plea; or on the other extreme, where the record may be so conclusive as to preclude its impeachment; or whether such in any instance is the effect of the record. The facts of this case render it unnecessary, indeed improper that we should do so. It affirmatively appears in this case, that process was served upon Pratt, one of the firm, and purported to be a service on the firm by personal service on Pratt. This may or may not, so far as the record showed, have been a good service on the firm by some practice or law of Louisiana, as the fact of the non-residence did not appear of record. The defence was therefore properly made by plea in this instance : and this brings us to inquire into the legal sufficiency of the plea in form and substance. The defence was that the court had not acquired jurisdiction of the person of the defendant when the judgment was rendered. The facts necessary to show that the court did not acquire such jurisdiction were the negative of every means by which jurisdiction might have been acquired. To this the defendant avers in his plea that he -was not served with process; that he had no notice whatever of the existence of the suit; that he made no appearance to the action either in person or by attorney and that when the suit was brought as well as when the judgment was rendered he was a non-resident of the State of Louisiana. We know of no other means by which the court could have acquired jurisdiction of thejxerson, and if there was none and these aver-ments are true (and the demurrer admits them to be true) then the court of Louisiana did not acquire jurisdiction of his person ; and we have said that this was a valid defence at law. The plea is in apt form; and we think the circuit court erred in sustaining the demurrer to it. The cases of McRea vs. Mallon, (13 Pic.) Davis vs. Connelly ex. (4 B. Mon.) and Shumway vs. Stillman (4 Cow.) above cited, not only show that this defence may be interposed by plea, but what facts are sufficient to constitute a valid defence. The only remaining qeustion to be decided relates to the admissibility of the evidence. The plaintiff offered the deposition of one skilled in the law's and familiar with the practice of the State of Louisiana; and also the laws of the State of Louisiana pui’porting to be published under the authority of the State, which were objected to as incompetent. The particular grounds of objection are not pointed out. The depositions appear to be regularly taken, and we think the evidence competent legal evidence for the purpose of proving the laws and practice of that State, which before the circuit court upon the trial of the case required to be proven as any other fact necessary to sustain the issue. 13 Pick. 49, McRea vs. Mallon, is in support of this opinion. Upon this point we think there was no error. But as the court erred in sustaining the demurrer of the plaintiffs, to defendant’s second plea the judgment must be reversed and the cause remanded for further proceedings to be had therein according to law. Let the judgment be reversed. Defendants in error appealed from the decision of this court, to the supreme court of the United States.